**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **KELLEY A. O'DELL,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:20-cv-2098** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **SUN LIFE ASSURANCE COMPANY OF** | : | **Magistrate Judge Vascura** |
| **CANADA,** *et al.,* | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on Defendant Huntington BancShares Inc.'s Motion for

Judgment on the Pleadings (ECF No. 18) and Defendant Sun Life Assurance Company of

Canada's Motion for Judgment on the Pleadings (ECF No. 23). For the reasons set forth below,

both Motions are **GRANTED**.

## I.      BACKGROUND

This case arises from a complaint filed by Plaintiff Kelley A. O'Dell on April 24, 2020

against Sun Life Assurance Company of Canada ("Sun Life") and Huntington BancShares Inc.

Group Health and Welfare Plan ("Huntington"),[1] in which Plaintiff brought claims under ERISA

concerning her claim for disability benefits. (ECF No. 1). On July 8, 2020, Plaintiff filed her

amended complaint, pleading three claims related to the denial of her long-term disability benefits

claim and subsequent non-disclosure of requested documents by the Defendants. (ECF No. 10).

Ms. O'Dell worked as a Relationship Banker III for Huntington and was eligible for long-term

disability benefits under the company's employee welfare benefit plan ("the Plan"). (*Id.* ¶¶ 1, 12–

---

[1] Counsel for Defendant Huntington has indicated that Plaintiff incorrectly named "Huntington BancShares, Inc." as
the Defendant in this Matter and will stipulate to a substitution and modification of the case caption in lieu of an
amended pleading. (ECF No. 18 at 1 n.1).

13). Under the Plan, Defendant Huntington is designated as the Plan Administrator and Defendant Sun Life administered the plan, making the determinations as to whether individuals qualified for benefits. (*Id.* ¶¶ 2–4). During the course of her employment, Ms. O'Dell alleges she took both short-term disability and Family and Medical Leave Act ("FMLA") leave related to symptoms of undiagnosed Hashimoto's Encephalopathy. (*Id.* ¶¶ 15–18). On or about March 14, 2019, Ms. O'Dell stopped working completely because of her disability and applied for long-term disability benefits with Sun Life, the insurer of her Plan's disability benefits. (*Id.* ¶¶ 2, 19–20). Because she had not yet met her Elimination Period under the Plan, Sun Life began this period on March 15, 2019. (*Id.* ¶¶ 21–22). On or about October 9, 2019, Sun Life denied the Plaintiff's claim for long-term disability benefits because she had not sufficiently demonstrated that she was "totally disabled" within the meaning of the policy. (*Id.* ¶ 23; *see also* ECF No. 10-1). After receiving the claim denial, Ms. O'Dell, through counsel, made three separate requests to Sun Life for her administrative claim file on October 25, 2019, November 14, 2019, and December 29, 2019. (*Id.* ¶¶ 24–25). On February 24, 2020, Ms. O'Dell "submitted a request for her administrative claim file to Huntington." (*Id.* ¶ 27). Ms. O'Dell alleges that she received no response from either Sun Life or Huntington to any of these requests. (*Id.* ¶¶ 25–26).

Ms. O'Dell then filed this lawsuit on April 24, 2020. Counts I and II concern Sun Life's consideration and eventual denial of Plaintiff's disability benefits claim. (*Id.* ¶¶ 31–52). In Count III, Ms. O'Dell brings a claim under 29 U.S.C. § 1132 for statutory penalties in the amount of $110 per day for a refusal to supply requested information in accordance with federal law. (*Id.* ¶¶ 53–59). Ms. O'Dell seeks the imposition of these penalties against both Sun Life and Huntington, in relation to her requests for her complete administrative claim file. (*Id.*). Both Defendants filed answers to her Amended Complaint. (ECF Nos. 12, 14).

On September 24, 2020, Defendant Huntington filed a Motion for Judgment on the Pleadings as to Count III pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 18). Huntington argues that, as the Plan Administrator, it is only subject to a statutory penalty under the narrow circumstances indicated in 29 U.S.C. § 1024(b)(4). Huntington contends that, under Section 1024(b)(4), it is only obligated to provide the Plaintiff with a limited set of plan documents, which do not include claim documents or any documents "used in the ministerial day-to-day processing of individual claims." (*Id.* at 6). Huntington argues that Ms. O'Dell's request for her "complete administrative claim file" was not a request for any of the specified plan documents and so it was under no duty to provide any documents to her. (*Id.* at 7). Huntington attached a copy of Ms. O'Dell's February 2020 request as an exhibit to its Motion and argues that consideration of the letter is proper because the document is referred to in Ms. O'Dell's pleadings and is integral to the Plaintiff's claim. (*Id.* at 5; *see also* ECF No. 18-1). Huntington also claims that Ms. O'Dell's letter did not provide "clear-notice" that she was seeking plan documents and that the plan document cannot be considered a "key document" at the center of the claim denial decision. (ECF No. 18 at 8–11). Because the documents requested do not fall within the ambit of 29 U.S.C. § 1024(b)(4), Huntington argues that its failure to disclose these documents cannot give rise to statutory penalties.

On October 10, 2020, Ms. O'Dell filed her Response in Opposition to Huntington's Motion. (ECF No. 22). In her response, she urged this Court to deny the Rule 12(c) Motion or, alternatively, to convert it to a partial motion for summary judgment under Rule 12(d) to be granted in her favor. (*Id.*). Plaintiff argues that Huntington is liable for the statutory penalty under Section 1132(c) because it wholly failed to respond to her inquiry and was required to produce documents within the scope of 29 U.S.C. § 1024(b)(4) after her request. (*Id.* at 8–9). Ms. O'Dell contends that

the disability insurance policy was the key document surrounding her disability insurance claim and her request satisfied the clear-notice test. (*Id.* at 9).

On October 26, 2020, Huntington filed its Reply, reiterating that the letter may be considered under Rule 12(c) without converting the Motion to one for partial summary judgment, that the letter did not meet the clear-notice standard, and that it cannot be liable for statutory penalties as a result. (ECF No. 22). Huntington also suggests that the proper vehicle for the Plaintiff's claims about her ignored requests is her Section 502(a)(1)(B) claim for benefits, which is not the subject of its Motion for Judgment on the Pleadings. (*Id.* at 10).

Defendant Sun Life also filed a Motion for Judgment on the Pleadings under Rule 12(c) pertaining to Count III on October 13, 2020. (ECF No. 23). Sun Life's argument concerning Section 1132(c) statutory penalties is two-fold. First, Defendant Sun Life argues that only plan administrators are liable for *per diem* penalties, and because it is an insurance company, there is no statutory authority to impose these penalties against it. (*Id.* at 5–6). Second, Sun Life raises a similar argument to Defendant Huntington: the request for the "administrative claim file" does not fall into any of the document types required to be produced under Section 1024(b)(4). (*Id.* at 6). Sun Life included in its filing the three requests that it received from Ms. O'Dell and argues that this Court may consider these items because the documents were referenced in Ms. O'Dell's pleadings and are integral to the Plaintiff's claim. (*Id.* at 4 n.4; *see also* ECF No. 23-1). Defendant Sun Life also notes that Ms. O'Dell has other avenues to litigate the issue of Sun Life's delayed response, namely, her Section 502(a)(1)(B) claim for benefits. (*Id.* at 7–8).

On November 2, 2020, Plaintiff O'Dell filed a response in opposition to Sun Life's Motion. (ECF No. 25). Ms. O'Dell argues that it is not "absolute" under Sixth Circuit case law that only a plan administrator can be assessed penalties under 29 U.S.C. § 1132(c). (*Id.* at 3). In support of

this argument, Plaintiff suggests that two leading cases for the proposition that only plan administrators are subject to *per diem* penalties, *VanderKlok v. Provident Life & Accident Insurance Co.*, 956 F.2d 610 (6th Cir. 1992), and *Hiney Printing Co. v. Branter*, 243 F.3d 956 (6th Cir. 2001), are distinguishable from the case *sub judice*. (*Id.*). Finally, Plaintiff suggests that Sun Life can be treated as a *de facto* plan administrator under a theory of equitable estoppel. (*Id.* at 6).

On November 13, 2020, Sun Life filed a Reply in support of its Motion. (ECF No. 26). In its Reply, Defendant Sun Life notes that all parties agree that Defendant Huntington is the plan administrator. (*Id.* at 3). Sun Life then emphasizes that the Sixth Circuit has consistently held that only plan administrators can be subject to statutory penalties under Section 1132(c). (*Id.*). Sun Life further argues that Plaintiff's theory of a *de facto* plan administrator has been dismissed by the Sixth Circuit and insurance companies cannot be subject to statutory penalties for failures to comply with information requests. (*Id.* at 3–5). Defendant Sun Life concludes its Reply by noting that Plaintiff has not asserted a claim for promissory estoppel in her Complaint, and that one would fail as a matter of law if it had been raised. (*Id.* at 7–8).

## II.   STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion"). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv.*

5

*Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). When a party moves for judgment on the pleadings, the Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to allegations in the complaint, the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted). Additionally, the Court "may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

## III.    LAW & ANALYSIS

Defendants' Motions for Judgment on the Pleadings both seek dismissal of Count III of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. Defendant Sun Life principally argues that, as an insurance company, it cannot be subject to statutory penalties under Section 1132(c) for nondisclosure of documents. (ECF No. 23). Defendant Huntington does not contest that, as Plan Administrator, it can be subject to such penalties. The core of Huntington's Motion is that Plaintiff's letter requesting her "administrative claim file" does not trigger statutory penalties because it did not make a request for any of the documents that Huntington is obligated by law to disclose. (ECF No. 18).

### A.      Entities Subject to Section 1132(c) Statutory Penalties

Section 502(c) of the Employee Retirement Income Security Act of 1972 (ERISA), codified as 29 U.S.C. § 1132(c), authorizes civil penalties for refusals to supply requested information as required by law. ERISA authorizes a penalty of up to $110 per day against "[a]ny administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request." 29 U.S.C. § 1132(c)(1)(B); 29C.F.R. § 2575.502c–1. The Sixth Circuit has characterized the Section 502(c) penalties as giving "teeth" to the other ERISA provisions, including ERISA's disclosure provisions. *See Minadeo v. ICI Paints*, 398 F.3d 571, 757 (6th Cir. 2005).

Section 1002 defines "administrator" as:

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;
(ii) if an administrator is not so designated, the plan sponsor; or
(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). The Sixth Circuit has noted that there are two types of "administrators" involved in ERISA-governed plans: claims administrators and plan administrators. *See, e.g.*, *Butler v. United Healthcare of Tenn., Inc.*, 764 F.3d 563, 570 (6th Cir. 2014). A claims administrator "administers claims for employee welfare benefit plans and has authority to grant or deny claims," *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006), while the plan administrator is usually the "employer who adopted the benefit plan in question." *Butler*, 764 F.3d at 570 (quoting *Corporate* Counsel's *Guide to ERISA* § 4:6 (2014)).

The crux of Sun Life's Motion for Judgment on the Pleadings is that it is not a plan administrator, and so it cannot be liable for statutory penalties under 29 U.S.C. § 1132(c). (ECF

No. 23 at 5). Sun Life notes that all parties are in agreement that Huntington is the plan administrator. (*See id.* at 5 (citing ECF No. 10 ¶ 3, ECF No. 13 ¶ 3, ECF No. 12 ¶ 3)). Defendant Sun Life then argues that Sixth Circuit precedents make clear that only plan administrators can be liable for damages, and that as an insurance company, it cannot be liable for statutory damages for failing to respond to an information request from a participant. (*Id.* at 5–6).

In response, Plaintiff argues that some of the principal cases finding only plan administrators can be held responsible for Section 1132(c) penalties can be distinguished from the case *sub judice*. (ECF No. 25 at 3). Ms. O'Dell then contends that the Sixth Circuit has "recognized the possibility that a non-administrator may be equitably estopped to deny that it is the plan administrator." (*Id.* at 6). She argues that is "unknown from the pleadings as to what information Sun Life provided to Ms. O'Dell that could ultimately lead to a finding that Sun Life was a de facto plan administrator." (*Id.*). Finally, Ms. O'Dell submits that in *Harrison v. PNC Financial Services Group*, 928 F. Supp. 2d 934 (S.D. Ohio 2013), this Court permitted a Section 1132(c) claim to survive a motion to dismiss, despite the plaintiff's failure to file the claim against the plan administrator. (*Id.* at 7).

In its Reply, Sun Life argues that the Sixth Circuit "has conclusively and repeatedly determined that 'only plan administrators are liable for statutory penalties under § 1132(c).'" (ECF No. 26 at 3 (quoting *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584–85 (6th Cir. 2002)). In response to Plaintiff's argument that Sun Life could be liable under a theory that it is a *de facto* plan administrator, Sun Life notes that the Sixth Circuit has found that putative plan administrators will not be found under ERISA where an administrator has been named in the plan document. (*See id.* at 3–4). Sun Life argues that the Sixth Circuit has "soundly rejected" the theory of *de facto* plan administrators, and most other Circuits have also rejected this theory of liability. (*Id.* at 5). Finally,

Sun Life notes that Plaintiff's Complaint has failed to assert a claim for promissory estoppel, and even if it had, that claim would not give rise to statutory penalties against Sun Life. (*Id.* at 7–8).

In the Sixth Circuit, it is "well established that only plan administrators are liable for statutory penalties under § 1132(c)." *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 577 F.3d 833, 843 (6th Cir. 2007) (quoting *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002); *see also Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001) (characterizing this proposition as "clear" within the Circuit). Where it was undisputed that an entity was defined as the plan administrator, and an individual directs her request for plan documents to someone other than that plan administrator, courts have consistently refused to impose statutory penalties against non-plan administrators. *See, e.g.*, *Caffey*, 302 F.3d at 584–85 (finding that an insurance company could not be liable for statutory damages for failure to comply with information request because it was not a plan administrator); *Hiney Printing*, 243 F.3d at 961 (finding district court did not abuse discretion in refusing to impose statutory penalties on plan administrator where request was directed elsewhere); *Mattingly v. Humana Health Plan, Inc.*, No. 1:15-cv-781, 2017 WL 2456955, at *3 (S.D. Ohio Feb. 1, 2017) (dismissing claims for Section 1132(c) civil penalties against claims administrator and plan sponsor); *Thompson v. TransAm Trucking, Inc.*, 750 F. Supp. 2d 87, 888–89 (S.D. Ohio. 2010) (dismissing civil penalties claims against entities that were not administrators of the plan because "[o]nly plan administrators are liable for statutory penalties"); *Malaney v. AT&T Umbrella Benefits Plan No. 1*, No. 2:10-cv-401, 2010 WL 5136206, at *8 (S.D. Ohio Dec. 9, 2010) (dismissing civil penalties claim where plaintiff had only submitted request to claims administrator). Even where a plan administrator has delegated all duties of administration to another entity, the Sixth Circuit has found no abuse of discretion

where a district court denied civil penalties against the plan administrator when the plaintiff requested documents from the wrong entity. *See Gore*, 477 F.3d at 843.

Plaintiff argues that this Court should depart from the clear direction of the Sixth Circuit that only plan administrators can be liable for Section 1132(c) penalties. In support, Ms. O'Dell contends that *Hiney Printing* and *VanderKlok* are sufficiently distinguishable, and that *Harrison* stands as a precedent in favor of this approach. Plaintiff notes that *Hiney Printing* concerned health benefit subrogation, rather than disability insurance benefits, and that the subrogation company in *Hiney Printing* sent a response to the plan participant. (ECF No. 25 at 4). These distinctions are not substantive, as both health benefit subrogation and disability insurance are both governed by ERISA and *Hiney Printing* concerns the same statutory provision as is at issue here. At the center of the court's holding in *Hiney Printing* was the fact that the Master Plan Document designated *Hiney Printing* as the plan administrator, and the plaintiff directed her request to a different entity. *Hiney Printing*, 243 F.3d at 961. Because of the clear designation of a plan administrator "and the lack of precedent for expanding the statutory definition of a plan administrator under ERISA," the Sixth Circuit declined to impose statutory penalties against the plan administrator for a request erroneously directed to its plan supervisor. *Id.*

Ms. O'Dell also submits that *VanderKlok*, upon which the court in *Hiney Printing* relied, is distinguishable because that case "involved a request for information, some of which was within the scope of § 1024(b)(4) and some which was outside of that scope (claim related documents)." (ECF No. 25 at 5). The factor distinguishing *VanderKlok*, according to Plaintiff, is that both the insurance company and the employer could provide the requested information, whereas here "[t]he full plethora of information that Ms. O'Dell needed to prepare her appeal could only be provided by Sun Life." (*Id.* at 5–6). In *VanderKlok*'s discussion of Section 1132(c) penalties, however, the

Sixth Circuit made clear that only the designated plan administrator could be held liable for such penalties, not an insurance company. *VanderKlok*, 956 F.2d at 618. Whether Sun Life possessed the necessary claim documents Ms. O'Dell needed for her appeal does not bear on whether they are liable for Section 1132(c) penalties. *VanderKlok* provides a straightforward analysis of Section 1132(c) liability and is not materially distinguishable from the present matter; in fact, it provides substantial support for Sun Life's position.

Plaintiff O'Dell suggests that this Court "has previously allowed a § 1132(c) claim to survive a motion to dismiss even though the claim was not filed against the plan administrator" and cites *Harrison v. PNC Financial Services Group*, 928 F. Supp. 2d 934 (S.D. Ohio 2013), in support. Ms. O'Dell includes language from the *Harrison* court's holding that the Court would not evaluate the adequacy of a response to a document request until the complete administrative record was before it. (ECF No. 26 at 7). This discussion in *Harrison* pertains to the adequacy of a plan administrator's response to a Section 1024(b)(4) request that covered "a variety of documents that are arguably outside the scope of Section 1024(b)(4)," but also clearly requested a complete copy of the Plan. *Harrison*, 928 F. Supp. 2d at 948. Sun Life, however, is arguing that it is not a plan administrator and so it cannot be held liable for Section 1132(c) statutory penalties at all, even if its conduct would violate Section 1024(b)(4). (*See* ECF No. 23 at 5–6). In *Harrison*, this Court granted Harrison leave to file a second Amended Complaint because the plaintiff had failed to properly name the plan administrator as designated under the plan. 928 F. Supp. 2d at 948. The *Harrison* court therefore did not allow Section 1132(c) claims against any non-plan administrator to survive, it rather allowed the plaintiff to cure a pleading defect by naming the true plan administrator.

11

None of the cases cited by Plaintiff justify this Court's departure from clear holdings by the Sixth Circuit that only plan administrators may be liable for Section 1132(c) penalties, especially where the plan in question clearly designated the plan administrator. Here, no party disputes that Huntington is the plan administrator. (*See* ECF No. 10 ¶ 3, ECF No. 13 ¶ 3, ECF No. 12 ¶ 3). In her response to Sun Life's Motion, Plaintiff reiterates that Huntington is the plan administrator. (ECF No. 25 at 6). Plaintiff then introduces an argument that it "is unknown from the pleadings as to what information Sun Life provided to Ms. O'Dell that could ultimately lead to a finding that Sun Life was a *de facto* plan administrator or that they were equitably estopped from claiming that they were not the plan administrator." (*Id.*). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's complaint, however, does not plausibly allege any facts to support a theory that Sun Life was a *de facto* plan administrator. Plaintiff also fails to plead, or even suggest, a theory of promissory estoppel against Sun Life. If Sun Life provided Ms. O'Dell with any information supporting a finding that it was a *de facto* plan administrator or otherwise equitably estopped from claiming it was not the plan administrator, it was the Plaintiff's burden to plead such facts or allegations in her complaint.

Because no party disputes that Defendant Huntington is the plan administrator and Sixth Circuit jurisprudence makes it clear that only plan administrators may be held liable for Section 1132(c) statutory penalties, Defendant Sun Life's Motion for Judgment on the Pleadings as to Count III is **GRANTED** and Count III of the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Defendant Sun Life.

### B.    Duty to Disclose Under 29 U.S.C. § 1024(b)

At the heart of Ms. O'Dell's claim for statutory penalties against Huntington is an alleged

violation of 29 U.S.C. § 1024(b)(4), which governs the disclosure of certain information to any

participant or beneficiary who requests it. This provision states that an administrator "shall, upon

written request" furnish a copy of the following documents: "the latest updated summary, plan

description, and the latest annual report, any terminal report, the bargaining agreement, trust

agreement, contract, or other instruments under which the plan is established or operated." 29

U.S.C. § 1024(b)(4). As the Supreme Court explained in *Firestone Tire & Rubber Co. v. Bruch*,

489 U.S. 101 (1989), Congress aimed to "ensur[e] that 'the individual participant knows exactly

where he stands with respect to the plan.'" 489 U.S. at 118 (quoting H.R. Rep. No. 93–533, at 11

(1973)). In *Cultrona v. Nationwide Life Insurance Co.*, 748 F.3d 698 (6th Cir. 2014), the Sixth

Circuit announced that district courts were to use to the "clear-notice" standard to determine

whether a request made pursuant to Section 1024(b)(4) triggered an obligation to provide covered

documents. The *Cultrona* court explained that "the key question under the clear-notice standard is

whether the plan administrator knew or should have known which documents were being

requested." *Cultrona*, 748 F.3d at 707. In deciding whether there was clear notice, the Court may

consider all "circumstances surrounding the document request." *Id.*

In *Cultrona*, a woman participating in her employer's death benefits plan submitted a claim

for the death of her husband, which the employer denied. 748 F.3d at 702. The denial of benefits

turned on one of the policy's exclusions concerning the deceased's consumption of alcohol, which

had also been amended a year prior to the plaintiff's claim for benefits. *Id.* at 702–03. After the

claims administrator reviewed her appeal and the amendment, it again denied the claim. *Id.* at 703.

After the second denial letter, the plaintiff requested "all documents comprising the administrative

13

record and/or supporting [employer]'s decision." *Id.* She submitted her request to the claims administrator, who forwarded the appeal to the employer for review. *Id.* The district court in *Cultrona* ultimately awarded $8,910 as a statutory penalty for the employer's failure timely to provide a copy of the accidental-death policy. *Id.* at 706. On appeal, the Sixth Circuit considered the wording of the request and the surrounding circumstances and found that "[a]lthough such language would not pass the clear-notice test for most of the documents identified" in Section 1024(b)(4), "one [would be] hard pressed to believe that the [employer] should not have known the accidental-death policy was the key document supporting its decision to deny [plaintiff]'s claim." *Id.* at 707. Important to this conclusion was the fact that a claims administrator employee proposed sending both a copy of the policy and amendment in response to the request and was instructed by the employer *only* to send a copy of the amendment. *Id.* The Sixth Circuit also relied on *Anderson v. Flexel*, 47 F.3d 243 (7th Cir. 1995), for the proposition that a plan administrator's knowledge of surrounding circumstances of the information requested "may require a response to an otherwise general request," suggesting that general requests do not typically trigger a duty to respond. *Id.* at 708 (quoting *Anderson*, 47 F.3d at 248).

Few courts have applied the clear-notice standard since the decision in *Cultrona*. In *Butler v. FCA US, LLC*, 706 F. App'x 256 (6th Cir. 2017), the plaintiff submitted a written request for the policy "which [he] was covered on the date of his accident" and otherwise "did not request any specific documents at all." 706 F. App'x at 261. The Sixth Circuit found that the employer did not have clear-notice that plaintiff wanted a policy from a previous year, which was not in effect at the time of the accident but that the plaintiff allegedly sought. *Id.* The Sixth Circuit affirmed the district court's decision refusing to award damages related to the alleged request for documents for a year other than the plaintiff's accident, finding no abuse of discretion. *Id.* In *Reichert v. Whirlpool*

*Corp.*, No. 3:18-cv-00001, 2020 WL 5877132 (M.D. Tenn. Oct. 2, 2020), *appeal filed*, No. 20-6240 (6th Cir. October 30, 2020), the district court found the clear-notice standard was not satisfied where a plaintiff, who was denied benefits under a Retiree Health Reimbursement Arrangement, requested a response from the plan administrator "explaining the language in the plan document that controls" and also requested "for a copy of the plan documents." 2020 WL 5877132, at *4. The *Reichert* court found it particularly relevant that the plaintiff's request for a "copy of the plan documents" implied it was renewing an earlier request, but no previous such request had been received. *Id.* Because the plan administrator "did not have context or notice of precisely what documents Plaintiff sought," the court found that the plan administrator had not received clear notice triggering its obligation to provide documents under ERISA. *Id.* at *4–5.

Like Defendant Sun Life, Defendant Huntington has moved for judgment on the pleadings as to Count III of the Plaintiff's Amended Complaint, which seeks statutory penalties under Section 1132(c). (ECF No. 18 at 2–3). Plaintiff seeks statutory penalties on the grounds that Huntington failed to respond to a February 2020 request for documents. (ECF No. 10 ¶¶ 26, 57–59). As a preliminary matter, Defendant Huntington seeks to have this Court consider the substance of the February 2020 request, which was not included by Ms. O'Dell in her pleadings. Plaintiff instead included as an exhibit to her complaint a certified mail green card return receipt. Defendant Huntington argues that "a document referred to in the pleadings and integral to the plaintiff's claim may be considered without converting [a motion to dismiss] to one for summary judgment." (ECF No. 18 at 5). In response, Plaintiff argues that the issue of the wording of the letter, as pertaining to Huntington's liability under Section 1132(c), "is outside of the scope of [her] pleadings." (ECF No. 22 at 5). She contends that the fact of the request alone is sufficient to give rise to statutory penalties, and that Huntington has misinterpreted the clear-notice standard.

(*Id.*). Ms. O'Dell argues that the inclusion of the letter as an exhibit to Huntington's motion means this Court must convert the Rule 12(c) motion to a motion for summary judgment. (*Id.* at 5–6). She also states that the issue of "whether Huntington violated § 1132(c) by failing to act" upon receipt of Ms. O'Dell's letter "can be determined by the information presently before this Court." (*Id.* at 6).

As to the preliminary matter of whether this Court may consider the February 2020 letter, filed as an exhibit to Huntington's Motion (ECF No. 18-1), this Court finds that the letter falls within the category of documents that the court may consider without converting a Rule 12(c) motion into a motion for partial summary judgment. When resolving a motion under Rule 12(c), courts "may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Central to Ms. O'Dell's claim for statutory penalties is the issue of whether Huntington violated 29 U.S.C. § 1024(b)(4) by not responding to her written request. Whether the written request triggers any obligation for Huntington to respond, in turn, depends on whether it provides clear notice that the request was for documents falling within the ambit of Section 1024(b)(4). Thus, the content of the February 2020 request is integral to Count III of Ms. O'Dell's complaint. Ms. O'Dell's complaint specifically references this letter, but it does not opine on the wording of the request sent. (ECF No. 10 ¶¶ 26, 57–59). Without the letter itself, this Court cannot properly determine whether Ms. O'Dell's request meets the clear-notice standard such that statutory penalties could be awarded under Section 1132(c). Accordingly, the letter can be considered in resolving Huntington's Motion.

16

To survive a motion for judgment on the pleadings under Rule 12(c), plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim does not need to contain "detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. The claim must be construed in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Huntington argues that the wording of the February 2020 letter did not make a request for Section 1024(b)(4) documents that meets the clear-notice standard. (ECF No. 18 at 6–7). Huntington also contends that *Cultrona* is distinguishable from the circumstances here because, even if the Plaintiff's request can be construed as requesting covered plan documents, those documents are "not at the center of the denial decision or Plaintiff's litigation." (*Id.* at 11). In response, Plaintiff argues that "[t]he fact that Huntington was sent a records request letter and failed to take action in violation of § 1132(c) is what is alleged" in her Complaint, and that Huntington has impermissibly changed the issue to "whether the content of that letter obviates their obligation to provide any response to Ms. O'Dell." (ECF No. 22 at 5). She further explains that Defendant Huntington has misinterpreted the clear-notice standard of *Cultrona* because the "disability insurance policy was the key document" surrounding her disability benefits claim. (*Id.* at 9). In its Reply, Huntington counters that Section 1024(b)(4) requires only that a plan administrator provide a claimant with requested plan documents "*if* her request meets the clear-notice standard," and that it requires "no more and no less." (ECF No. 24 at 4). Huntington also responds that the cases relied upon by Plaintiff, where plan administrators did respond to a plaintiff's request, were cases where plan administrators "went beyond" what is statutorily required. (*Id.* at 5).

17

Whether Plaintiff can maintain a Section 1132(c) claim for statutory penalties is contingent upon whether the Defendant was under any statutory obligation to respond to her communication. In her Complaint, Ms. O'Dell alleges that she sent a request for the "complete administrative file" to Huntington on February 24, 2020, which was received by Huntington on February 28, 2020. (ECF No. 10 ¶ 57). At the time she filed her Complaint, Plaintiff had not received any response from Huntington and requests an award of $110 per day for the failure to comply with her request for "a copy of her administrative file and/or copy of her Plan documents, and/or copy of her Summary Plan Description." (*Id.* ¶¶ 58–59). Defendant Huntington has filed a copy of the February 24, 2020 correspondence it received from Ms. O'Dell, via counsel, wherein she makes the following request:

> I am requesting to be provided a copy of my client, Ms. Kelly O'Dell's, complete administrative claim file, including but not limited to, peer medical reviews, medical records, and all other documents, records, notations, emails, logs, or information relating to Ms. O'Dell's claim for disability benefits, as administered by your organization or by Sun Life.

(ECF No. 18-1). The request also attached an authorization to release medical records signed by the Plaintiff, which indicated that the following information was authorized to be released:

> Complete medical records, itemized account statements, doctors or nurses notes or impressions or opinions, or any other protected medical information not previously listed, for the complete date range requested by the person authorized to receive such records by this instrument.

(*Id.*).

The key issue is whether the language in the February 2020 correspondence provided clear notice to Huntington that the Plaintiff was requesting documents that Huntington was mandated by ERISA to furnish. Section 1024(b)(4) requires a plan administrator, such as Huntington, to provide the following set of documents to participants upon receipt of a written request: "the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining

18

agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The Sixth Circuit has interpreted "other instruments" as "properly limited to those class of documents which provide a plan participant with information concerning how the plan is operated." *Allinder v. Inter-City Prods. Corp. (USA)*, 152 F.3d 544, 549 (6th Cir. 1998). In *Allinder*, the Sixth Circuit juxtaposed plan documents, including other instruments, with claim documents, which are "used in the ministerial day-to-day processing of individual claims pursuant to other documents that determine the plan's operation." *Id.* Claim documents are not included within the ambit of Section 1024(b)(4) and a request for claim documents does not trigger a duty for the plan administrator to respond.

Ms. O'Dell's counsel requested her "complete administrative claim file" from Huntington, which fall squarely within the category of claim documents not covered by Section 1024(b)(4). The request makes clear that it seeks documents related to the ministerial claim-processing of her disability benefits claim, including medical records, medical reviews, internal e-mails, and logs related to the claim. The only language which may potentially trigger a request for plan documents is the phrase "information relating to Ms. O'Dell's claim for disability benefits." This Court must therefore determine whether this phrase meets the clear-notice standard adopted by the Sixth Circuit in *Cultrona*, which instructs this Court to consider "whether the plan administrator knew or should have known which documents were being requested." *Cultrona*, 748 F.3d at 707. In deciding whether there was clear notice, the Court may consider all "circumstances surrounding the document request." *Id.*

In *Cultrona*, the Sixth Circuit considered whether a request for "all documents comprising the administrative record and/or supporting [employer]'s decision" triggered an obligation for the employer to furnish the death benefits policy underlying the plaintiff's claim. *Id.* at 703. The Sixth

Circuit found that generally this language "would not pass the clear-notice test for most of the documents" listed in Section 1024(b)(4), but that the employer should have known that "the accidental-death policy was the key document supporting its decision" to deny the claim for benefits. *Id.* at 707. In its analysis, the Sixth Circuit also cited a Seventh Circuit case, *Anderson v. Flexel*, 47 F.3d 243 (7th Cir. 1995) for the proposition that a plan administrator's knowledge of surrounding circumstances of information requested "may require a response to an otherwise general request," suggesting that general requests do not typically trigger a duty to respond. *Id.* at 708 (quoting *Anderson*, 47 F.3d at 248).

Neither the language of the Plaintiff's request nor the surrounding circumstances remove Plaintiff's request from the category of general requests not triggering a duty by a plan administrator to respond. The core of Plaintiff's lawsuit is the denial of her long-term disability benefits, made by Sun Life in October 2019, wherein Sun Life determined that the documentation of the case did not support a finding that Plaintiff was totally disabled and unable to perform the duties of her position. (ECF No. 10). Huntington has wholly delegated claim administration to Sun Life and Plaintiff does not allege that Huntington maintains any role in processing claims, including appeals. (*Id.* ¶ 3–4). In *Cultrona*, the claims administrator forwarded the benefits materials to the plan administrator, who then directed the administrator to deny a claim for death benefits, because it was precluded from coverage under the terms of the plan. *Cultrona*, 748 F.3d at 702. Under these circumstances, the Sixth Circuit found that a generally worded request could provide clear notice to the plan administrator that it needed to provide the death-benefit policy because the text of the exclusion was the key issue and the record demonstrated that the claims administrator proposed sending a copy of the policy to the plaintiff. *Id.* at 707.

Upon receiving the generally worded request in this case, it is not plausible that Huntington had received clear notice that the text of the long-term disability plan was the "key document" underlying Ms. O'Dell's claims and that Ms. O'Dell was making a request for plan documents. Ms. O'Dell's request was for the "complete administrative claim file," which included "information relating to Ms. O'Dell's claim for disability benefits." (ECF No. 18-1). A general request for "information," following a request for a claim file, including medical documents and records related to a claim for disability benefits, is not sufficient to provide clear notice to a plan administrator who is not involved at any stage of claim-processing or appeals that a request for plan documents has been made. That Plaintiff intended "information" to include the plan documents is certainly possible but that does not make it plausible to the recipient that this was the meaning of "information" in the context of the request. Plaintiff's request reads as a straightforward request for her "complete administrative claim file," which falls into the category of ministerial documents not included within the meaning of Section 1024(b)(4) and which a plan administrator has no obligation to provide. ERISA requires a plan administrator to furnish covered documents when it has received clear-notice via written request for such documents; where a request as written cannot reasonably be read to request such documents, no obligation has been triggered and thus, no penalties can attach for a failure to meet that obligation.

Because Plaintiff's request does not make a request for documents covered by Section 1024(b)(4), no statutory penalties may attach and Defendant Huntington's Motion for Judgment on the Pleadings as to Count III is **GRANTED** and Count III of the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Defendant Huntington.

## IV.    CONCLUSION

For the reasons discussed above, Defendant Sun Life's Motion for Judgment on the Pleadings (ECF No. 23) is therefore **GRANTED** and Count III of Plaintiff's Complaint is **DISMISSED** against Sun Life. Defendant Huntington's Motion for Judgment on the Pleadings (ECF No. 18) is also **GRANTED** and Count III of Plaintiff's Complaint is **DISMISSED** against Huntington.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  February 3, 2021**